# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COLIN GORDON, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | NO. 4:16-CV-40042-TSH |
| v. | ) | |
| ASTRAZENECA AB, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
## (Docket No. 8)

### August 9, 2016

**HILLMAN, D.J.**

Colin Gordon (Plaintiff) brought this action against his former employer, AstraZeneca AB (AstraZeneca or Defendant), to recover unpaid severance benefits.  He asserts claims under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and for common-law breach of contract.[1]  Defendant moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's motion (Docket No. 8) is ***granted***.

---

[1] In his complaint, Plaintiff also sought relief under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*.; the state meal-break law, Mass. Gen. Laws ch. 149, §§ 100, 101; and the state overtime law, Mass. Gen. Laws ch. 151, §§ 1A, 1B.  Plaintiff concedes that he has not pled a colorable claim under the FLSA.  The facts pled in his complaint do not support his claims under the state laws regulating meal breaks and payments for overtime, and he does not assert any arguments in support of these claims.  Accordingly, to the extent that he intends to pursue these claims, they are dismissed.

## **Background**

The following facts are taken from Plaintiff's complaint and are assumed true for the purposes of this motion.  For approximately the last eighteen years, AstraZeneca employed Plaintiff, primarily as a senior engineer, at its location in Westborough, Massachusetts.  In August of 2014, AstraZeneca announced that the Westborough branch would be closing.  Thereafter, Plaintiff requested a copy of the company's Separation Plan (Plan).  In October of 2014, AstraZeneca provided Plaintiff with a copy of the Separation Plan Summary (Plan Summary).  The Plan Summary included information on how an employee may be given "Notice of Termination" and a "Termination Date" if selected for involuntary termination, entitling the employee to benefits under the Plan.  These benefits included a lump-sum separation payment and a continuation of health benefits, life insurance, and access to the employee assistance program.

In May of 2015, Plaintiff met with his supervisor and a human resources representative and orally received a termination date of September 10, 2015.  In reliance on this termination date, he sought other employment opportunities.  He declined job offers beginning prior to the termination date to ensure that he would receive the severance pay promised under the Plan.

On July 13, 2015, after Plaintiff had secured other employment, AstraZeneca notified its employees in a company-wide announcement that the Westborough branch would remain open for an additional year.  Plaintiff worked for AstraZeneca until his oral termination date of September 10, 2015.  On October 7, 2015, AstraZeneca issued a letter to its employees that read in part: "If employees have received an exit date and are asked to stay past that date, they are not required to extend employment and will still receive separation benefits." (Docket No. 1-1 at 12.)  The letter further noted that "[a]n employee who has not received a Notice of Termination, who does not wish to stay with [AstraZeneca] would forfeit their separation benefits." (Docket No. 1-1 at 12.)

Plaintiff made a written request for benefits, which was denied in writing in September of 2015. Significantly, the denial letter informed him of his right to appeal the decision within sixty days of receipt of the letter.  He did not pursue an appeal, and in March of 2016 he brought this suit in Superior Court.  Defendant removed the action to this Court and now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **Standard of Review**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 570 (2007). Plausibility does not require probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio–Hernàndez v. Fortuño–Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

In considering a motion to dismiss, the court must take all of the well-pleaded factual allegations as true and "give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir. 1999)).   In addition to the complaint, the court may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." *Curran v.Cousins,* 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)). "This is true even when the documents are incorporated into the movant's pleadings." *Id.*

**Discussion**

The dispositive issue in this case is whether Plaintiff's state-law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*, and thus subject to the sixty-day appeal period.  A state-law cause of action is preempted by ERISA when "an individual, at some point in time, could have brought his [or her] claim under [ERISA's civil enforcement provision], and where there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 210 (2004).  ERISA's preemption clause provides that "the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  Thus, the "ERISA preemption analysis . . . involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." *Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 49 (1st Cir. 2000) (quoting *McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir. 1998)).

1. *Whether the Plan is an ERISA Plan*

"[A]n employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries." *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995) (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12 (1987); *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 n.2 (1992)).  When evaluating whether a given program falls under ERISA, the court looks to "the nature and extent of an employer's benefit obligations." *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262, 266-67 (1st Cir. 2001) (quoting *Rodowicz v. Mass. Mut. Life Ins. Co.,* 192 F.3d 162, 170, *amended by* 195 F.3d 65 (1st Cir. 1999)).

> Those obligations are the touchstone of the determination: if they require an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan; but if the benefit obligations are merely a one-shot, take-it-or-leave-it incentive, they are less likely to be covered. Particularly germane to assessing an employer's obligations is the amount of discretion wielded in implementing them. Where subjective judgments would call upon the integrity of an employer's administration, the fiduciary duty imposed by ERISA is vital. But where benefit obligations are administered by a mechanical formula that contemplates no exercise of discretion, the need for ERISA's protections is diminished.

*Id.* at 267.

Whether a program is an ERISA plan is a fact-intensive inquiry specific to each case, and "[t]here is no authoritative checklist that can be consulted to determine conclusively if an employer's obligations rise to the level of an ERISA plan." *Belanger,* 71 F.3d at 455. However, it is clear that a benefits package that consists primarily of a non-discretionary, one-time, lump-sum benefit it is not an ERISA plan. *See Coyne*, 482 U.S. at 14-16 (statute providing for one-time, lump-sum payment, based on length of service, was not ERISA plan); *O'Connor*, 251 F.3d at 266-67 (benefits package consisting primarily of lump-sum payment was not ERISA plan); *Rodowicz,* 192 F.3d at 170-72 (voluntary termination program offering one-time lump-sum or incremental severance benefit was not ERISA plan); *Belanger,* 71 F.3d at 455-56 (successive lump-sum offers to voluntary retirees did not constitute an ERISA plan). In *O'Connor*, the court held that a benefits package that consisted primarily of a "one-shot, take-it-or-leave-it incentive" payment—the administration and application of which was purely mechanical—was not an ERISA plan. 251 F.3d at 267. The benefits package in *O'Connor* also included educational benefits, pension credits, and COBRA premiums; however, the court construed these benefits as peripheral and not substantial enough not to transform the entire package into an ERISA plan. *Id.* at 269–70.

5

In contrast, in *Simas v. Quaker Fabric Corp. of Fall River*, the benefit package at issue was a statute that required an employer to pay termination benefits to employees who were terminated within two years after a corporate takeover. 6 F.3d 849, 853 (1st Cir. 1993). Employees discharged for cause were ineligible for the benefit. *Id.* The court held that this was an ERISA plan because "the time period [was] prolonged, individualized decisions [were] required, and at least one of the criteria [was] far from mechanical." *Id.* at 854. In assessing ERISA preemption cases, courts of this District have considered a variety of related factors, including whether the payments are ongoing; whether the employer's obligation is triggered by the occurrence of a particular contingency; whether the plan administrator has discretionary functions; whether the plan contains a detailed claims procedure; and whether the plan states that it is governed by ERISA. *See Dulchinos v. Bay State Gas Co.*, 462 F. Supp. 2d 155, 160 (D. Mass. 2006); *Nadworny v. Shaw's Supermarkets, Inc.*, 405 F. Supp. 2d 124, 132, 134, 136 (D. Mass. 2005).

AstraZeneca offers several reasons why the Plan is an ERISA plan. First, by its terms the Plan gives the "Administrative Committee" "the exclusive right to interpret, construe, and implement" its provisions, and provides that "[t]he decisions . . . of the Administrative Committee shall be conclusive and binding upon Eligible Employees, Participants, and any other persons having any interest under the Plan." (Docket No. 9-2 at 18.) Second, the Plan gives its administrators discretion to determine who is eligible for benefits, because employees who are subject to "Involuntary Termination" are eligible, whereas those subject to "Ineligible Termination" are not eligible. (Docket No. 9-2 at 9, 12.) One of the criteria for ineligibility is "Termination for Cause/Discharge." (Docket No. 9-2 at 9.) Finally, the Plan provides a detailed process for bringing and appealing claims, and it provides the following reference to ERISA: "The terms of the Plan shall be construed and enforced to comply with ERISA and the Code. The

provisions of the Plan are intended to control over state law under the preemptive authority of ERISA." (Docket No. 9-2 at 19, 21.)  The Plan Summary also contains a section titled "Statement of ERISA Rights," which outlines the employee's protections and entitlements under ERISA. (Docket No. 9-3 at 21.)

Plaintiff argues that the Plan is not an ERISA plan because its main attraction is a lump sum payment calculated by the length of the employee's employment and target incentive performance, which are nondiscretionary factors.  He further argues that "the Plan Summary does not indicate that the Plan is governed by ERISA" and does not provide information on the appeals process. (Docket No. 11 at 8, 9.)  In contrast to Plaintiff's contentions, the Plan Summary provides a "Statement of ERISA Rights," as well as the following under the heading "How to Appeal a Denied Claim": "If you want to appeal a denied claim, you must submit a written request for review within 60 days of receiving the notice of denial." (Docket No. 9-3 at 20.)  This section includes an address, explains what may be submitted, and sets forth the time frame for receipt of a written decision.

I find that the Plan is an ERISA plan.  Like the benefits at issue in *Simas*, the severance payment here is only available to "eligible" employees, and one of the criteria for eligibility is that the employee cannot have been terminated "for cause."  Moreover, the Plan grants discretion to the administrator to construe its terms, including the definition of "notice of termination," which was the purported basis for AstraZeneca's denial of benefits in this case. (Docket No. 9-5 at 2.) Thus, the severance payment, although a lump sum, is paid out on a discretionary basis.  As for the other benefits under the Plan—post-termination medical, dental, life insurance, and employee assistance—these are the types of ongoing benefit payments that constitute a typical ERISA plan. *See O'Connor*, 251 F.3d at 270 ("the payment of [post-separation insurance] premiums for at least

one year after separation, probably falls within ERISA's protections"); *Demars v. CIGNA Corp.*, 173 F.3d 443, 447 (1st Cir. 1999) ("courts have found that claims related to COBRA coverage are preempted by ERISA.").   Furthermore, both the Plan and the Plan Summary contain clear statements of intent that this is an ERISA plan.

> 2.  <u>Whether the State-Law Causes of Action "Relate to" the Plan</u>

"ERISA preempts a state law that has a connection with or refers to an ERISA-regulated benefits plan, 'even if the law is not specifically designed to affect such plans, or the effect is only indirect and even if the law is consistent with ERISA's substantive requirements.'" *Hampers*, 202 F.3d at 49 (quoting *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130 (1992) (internal quotation marks and citations omitted)).   However, a state action does not "relate to" an ERISA plan if its effect on the plan is "too tenuous, remote, or peripheral," as "is the case with many laws of general applicability." *Id.* (citations omitted).   "[A] cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action." *Id.* at 52 (citations omitted).   Likewise, "ERISA preempts state law causes of action for damages where the damages must be calculated using the terms of an ERISA plan." *Id.* (citing *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 794 (1st Cir. 1995)).

The Supreme Court has "identified three categories of state laws that 'relate to' ERISA plans" for purposes of preemption: "(1) state laws that 'mandate[ ] employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement mechanisms' to ERISA's enforcement regime." *Id.* at 51 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 658-59 (1995)).   The third category applies to the

state law causes of action in this case. "[I]n order to assess whether the state law cause of action is an alternative enforcement mechanism, [the court] must 'look beyond the face of the complaint' and determine the real nature of the claim 'regardless of plaintiff's . . . characterization.'" *Id.* (quoting *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 5 (1st Cir. 1999)).

AstraZeneca argues that Plaintiff's state law claims relate to the Plan because an analysis of the claims would require an evaluation of the Plan. Plaintiff, for his part, does not respond to this prong of the preemption argument. I find that Plaintiff's claims for breach of contract and violation of the Wage Act relate to the Plan and are thus preempted by ERISA. In his complaint, he asserts that he complied with the terms of the Plan but was denied benefits to which he was entitled pursuant to the Plan. As damages, he seeks to recover severance pay. In short, he attempts to enforce the terms of the Plan through state-law causes of action—precisely the type of alternative enforcement that ERISA prohibits. Accordingly, I find that Plaintiff's claims are preempted by ERISA.

3. *Exhaustion of Administrative Remedies*

In his opposition to the instant motion, Plaintiff requests leave to amend his complaint to add a claim under ERISA, in the event that this Court finds that his state law claims are preempted. This amendment would be futile, because Plaintiff has failed to exhaust his administrative remedies. ERISA requires that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). The employee, in turn, is required to exhaust all administrative remedies before raising a claim in federal court. *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 47 (1st Cir. 2009).

9

Here, the Plan provides a procedure for the denial of benefits and the employee's right to appeal.  Under this procedure, an employee who wishes to appeal the denial of benefits must do so within sixty days of receiving written notice of the denial of benefits. (Docket No. 9-2 at 19.) The Plan Summary includes an abbreviated version of these instructions, including the sixty-day time limit. (Docket No. 9-3 at 20.)  Plaintiff made his initial request for benefits in August of 2015. On September 25, 2015, his counsel received a letter from AstraZeneca stating that the claim had been denied and that Plaintiff could appeal this decision within sixty days. (Docket No. 9-5 at 3.) Plaintiff concedes that he received this letter and that he did not pursue an appeal.

Plaintiff argues that any administrative appeal would have been futile because "[t]he appeal process is no more robust or substantial than the initial demand," and he "made a good-faith effort to comply with the terms of the plan." (Docket No. 11 at 9.)  "Futility is an exception to ERISA's exhaustion requirement," meaning that "[a]n employee is not required to exhaust his administrative remedies in those instances where it would be futile for him to do so." *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 62 (1st Cir. 2005) (citing *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988)).  However, "blanket assertion[s], unsupported by any facts, [are] insufficient to call the futility exception into play." *Id.* at 63.  To show futility, the employee must produce evidence to show that the administrative review would have been futile. *See id.*; *Drinkwater,* 846 F.2d at 826. Plaintiff's blanket statement about the inadequacy of the appeals procedure is insufficient to satisfy this requirement.

In sum, I find that Plaintiff's state-law claims are preempted by ERISA and that he has failed to exhaust his administrative remedies.  Accordingly, his claims must be dismissed, and I need not address Defendant's alternative arguments.

10

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 8) is ***granted***, and Plaintiff's complaint is hereby dismissed.

**SO ORDERED.**

***/s/ Timothy S. Hillman***<br>**TIMOTHY S. HILLMAN**<br>**DISTRICT JUDGE**